IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

DANIEL M. LUCEY,
COLLEEN S. LUCEY,
and ABEL LUCEY,

        Plaintiffs,

v.                                          Civil Action Nos. 5:17-CV-66
                                                            5:17-CV-126
                                                             (BAILEY)

SWN PRODUCTION COMPANY, LLC,
and CHESAPEAKE APPALACHIA, LLC,

        Defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This matter is before this Court for consideration of Defendant Chesapeake Appalachia, LLC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. 18], filed November 30, 2017. The matter is fully briefed and ripe for review.

## BACKGROUND

This action involves the interpretation of an oil and gas lease. On August 22, 2006, Daniel and Colleen Lucey ("the Luceys") and Abel Lucey (collectively, "the plaintiffs") each entered into an Oil, Gas and Coalbed Methane Lease with SWN Production Company, LLC ("SWN") and/or its successor in interest, Chesapeake Appalachia ("Chesapeake"), with a primary term of five years [No. 5:12-CV-39, Doc. 1; No. 5:12-CV-40, Doc. 1]. The lease was set to expire on August 21, 2011, but could be renewed by Chesapeake under certain conditions. Chesapeake attempted to extend the lease, but the extension was rejected by the plaintiffs for various reasons. Ultimately, the plaintiffs filed actions in this

Court, which were subsequently consolidated, seeking a declaration that the lease had terminated. The matter was settled and dismissed by joint stipulation.

The terms of the resulting settlement agreements[1] are now at issue. The settlement agreements state, in relevant part, that:

> In addition, Chesapeake agreed to pay Releasors an additional $500.00/acre for 203.39 acres, totaling $101,695.00 ("Additional Consideration") if there is not a commencement of two (2) wells within one (1) year of the effective date of this agreement. For the purposes of this agreement, commencement of a well is defined consistent with the terms of the Lease.

[Doc. 14-3, ¶1]. The lease provides that, "[a] well shall be deemed commenced when preparations for drilling have been commenced." [Doc. 14-1, ¶2]. The lease also grants Chesapeake the right to "consolidate the leased premises or any part thereof . . . for the purpose of drilling a well thereon." [Doc. 14-1, ¶3]. The settlement agreements were signed on October 29, 2012.

Chesapeake consolidated various properties, including the plaintiffs', into a pooled unit. Pursuant to the terms of the lease agreement, Chesapeake recorded a Declaration and Notice of Pooled Unit—Michael Dunn Southwest Unit ("Dunn Unit") on January 3, 2013, which identified the plaintiffs' property as part of the unit. In late 2012, Chesapeake applied for permits to drill four wells that would be located in the Dunn Unit, and received the permits shortly after. The permits were applied for prior to the signing of the settlement agreement, although subsequent activity on the permits, including the spud date and revisions, occurred after the agreement was signed. *See* WVDEP Oil and Gas–Permit

---

[1] The settlement agreements between the defendant, the Lucey plaintiffs, and Abel Lucey are identically worded and only differ so far as the numbers listed (with reference to acres of land and total values).

2

Search, West Virginia Department of Environmental Protection, Office of Oil and Gas, https://apps.dep.wv.gov/oog/permitsearch/permitsearch.cfm (last visited Feb. 5, 2018).

On May 17, 2017, the Lucey plaintiffs filed a complaint against SWN in the Northern District of West Virginia [No. 5:17-CV-66, Doc. 1]. The Lucey plaintiffs alleged four counts against SWN: (1) breach of contract, (2) declaratory judgment, (3) trespass, and (4) private nuisance. On September 29, 2017, they filed an Amended Complaint [Id., Doc. 14], in which Chesapeake was named as a defendant, as SWN's successor in interest.

On August 10, 2017, Abel Lucey filed a complaint against SWN in the Northern District of West Virginia [No. 5:17-CV-126, Doc. 1]. The complaint was substantially the same as that of the Lucey plaintiffs, and alleged the same four counts. Abel Lucey filed an amended complaint on September 29, 2017 [Id., Doc. 3], and named Chesapeake as a defendant, as SWN's successor in interest.

On November 30, 2017, Chesapeake filed a Motion to Dismiss for Failure to State a Claim [No. 5:17-CV-66, Doc. 18; No. 5:17-CV-126, Doc. 9] in both actions. On December 6, 2017, the plaintiffs filed a motion to consolidate the two civil actions because they present identical legal issues. This Court granted the motion on December 11, 2017, and ordered the actions consolidated and designated the first-filed action, No. 5:17-CV-66, as the lead case [Doc. 22].[2]

## **STANDARD**

In reviewing the sufficiency of a complaint under Fed. R. Civ. P. 12(b)(6), a district court must accept the factual allegations in the complaint as true. *Zak v. Chelsea*

---

[2] Citations to the docket will refer to the docket in the lead case, 5:17-CV-66, unless otherwise specified.

*Therapeutics Int'l, Ltd.*, 780 F.3d 597, 601 (4th Cir. 2015) (citing *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 176 (4th Cir. 2009)). While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* However, when reviewing the sufficiency of a complaint, a court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Marsh v. United States*, 2016 WL 247563, at *2 (D.Md. 2016) (considering public records on government website on motion to dismiss). A court may consider documents attached to a motion to dismiss when they are "integral to and explicitly relied on in the complaint and . . . the plaintiffs do not challenge [their] authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

4

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## ANALYSIS

This case turns on the interpretation of the first paragraph of the settlement agreements, which provides as follows:

> In addition, Chesapeake agreed to pay Releasors an additional $500.00/acre for 203.39 acres, totaling $101,695.00 ("Additional Consideration") if there is not a commencement of two (2) wells within one (1) year of the effective date of this agreement. For the purposes of this agreement, commencement of a well is defined consistent with the terms of the Lease.

[Doc. 14-3]. The plaintiffs argue that this provision required Chesapeake to pay additional consideration if it did not commence two wells on the property between the effective date of the agreement and one year of the effective date. Further, the plaintiffs contend that although Chesapeake did drill four wells affecting their property, the wells were not commenced "within" the one year period following the signing of the agreement, because the permits were acquired before the effective date of the agreement. Therefore, the plaintiffs argue, the defendant breached the settlement agreement by failing to pay the additional consideration.

The defendant argues that the plaintiffs' breach of contract claim must be dismissed for failure to state a claim, because the plaintiffs do not allege a breach under the clear language of the agreement. Specifically, the defendant argues that commencement of two wells, defined by reference to the lease as when preparation for drilling has been commenced, occurred during the one-year deadline, because the preparation for and drilling of the wells was actually commenced and completed by that date. Further,

Chesapeake argues that the settlement agreement imposed only an end date by which performance must be completed, but did not create a "start date" for performance. Thus, the filing for permits before the effective date of the agreement did not render the four wells actually drilled during that time "too early" such as to require the defendant to pay the additional consideration.

"A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits." *Volvo Const. Equip. N. Am. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599–600 (4th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)). Under West Virginia law, a plaintiff establishes breach of contract by alleging "facts sufficient to support the following elements: the existence of a valid, enforceable contract; that the plaintiff has performed under the contract; that the defendant has breached or violated its duties or obligations under the contract; and that the plaintiff has been injured as a result." *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F.Supp.2d 694, 714 (S.D. W.Va. 2009) (Goodwin, C.J.) (citations omitted); *see also McDaniel v. Travelers Property Cas. Ins. Co.*, 121 F.Supp.2d 508, 511 (N.D. W.Va. 2000) (Broadwater, J.). When there is no dispute that a written contract exists, "[I]t is the province of the Court, and not of the jury, to interpret" the agreement. Syl. Pt. 1, *Toppings v. Rainbow Homes, Inc.*, 490 S.E.2d 817, 821, 200 W.Va. 728, 732 (1997) (internal quotations omitted). "An oil and gas lease which is clear in its provisions and free from ambiguity, either latent or patent, should be considered on the basis of its express provisions and is not subject to a practical construction by the parties." *Flanagan v. Stalnaker*, 607 S.E.2d 765, 770, 216 W.Va. 436, 440 (2004).

"Contract language is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." *State ex rel. Fazier & Oxley, L.C. v. Cummings*, 569 S.E.2d 796, 803–04, 212 W.Va. 275, 282 (2002) (internal quotation marks omitted). "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous," *Flanagan*, 607 S.E.2d at 769, 216 W.Va. at 439, and "the question [of] whether a contract is ambiguous is a question of law for the court." *Cunningham Energy LLC v. Ridgetop Capital II, LP*, 2014 WL 4385875, at *5 (N.D. W.Va. 2014) (Bailey, C.J.).

The parties do not dispute that the settlement agreement is a valid and enforceable contract. The plaintiffs allege that the defendant caused injury by failing to pay the additional consideration agreed to under the valid agreement. The only clear dispute raised in the motion to dismiss and resulting briefs is whether the defendant breached the contract by: (1) failing to pay additional consideration when two wells were not commenced between the effective of the agreement and one year later, and (2) failing to provide notice of Unit Declaration.

Here, the settlement agreement provides, in relevant part, that Chesapeake would pay additional consideration "if there is not a commencement of two (2) wells within one (1) year of the date of the effective date of this agreement." Based upon the clear language of the contract, the plaintiffs would only be entitled to the additional consideration if two wells were not commenced within one year. This language speaks only to a *deadline* for completion—within one year, two wells must be commenced—not to a range of dates

7

within which the commencement of two wells must be commenced. The clear language of the agreement reflects only a one year deadline *defined*, but not *limited*, by the date the settlement agreement was actually signed. Four wells were completed within that deadline. As such, the plaintiffs cannot present a cognizable claim for relief, as by the plaintiffs' own pleadings and the publicly available records, no breach occurred.

As to the second claim of breach, whether the defendant breached the lease by failing to provide the plaintiffs a notice of Unit Declaration, the plaintiffs allege that "[i]n violation of the Lease terms, no notice of the Unit Declarations was provided to the [plaintiffs], thereby making the declaration void as to the [plaintiffs]." [Doc. 14, ¶18]. The lease states, in relevant part, that:

> The Lessee shall effect such consolidation by executing a declaration of consolidation with the same formality as this . . . lease setting forth the leases or portions thereof consolidated, the royalty distribution and recording the same in the recorder's office at the courthouse in the county in which the leased premises are located and by mailing a copy thereof to the Lessor at the address hereinabove set forth unless the Lessee is furnished with another address.

[Doc. 1-1, p. 2]. First, this Court will note that it is not obliged to accept legally conclusory language—that "the declaration is void as to the [plaintiffs]"—as true, nor are these pleadings alone sufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555; *Papasan*, 478 U.S. at 286 (courts "are not bound to accept as true a legal conclusion couched as a factual allegation."). It is unclear whether the plaintiffs intended to plead this as a breach of contract, as it is only incorporated by reference along with the other 21 accompanying paragraphs under the header "Count I–Breach of Contract," and no damages are alleged.

Assuming that the plaintiffs did intend to plead a claim for breach of contract on this

basis, they have failed to state a claim upon which relief has been granted, because they do not allege any resulting injury. *Exec. Risk Indem.*, 681 F.Supp.2d at 714. Further, this Court has previously considered similar language and facts, *Berghoff v. Chesapeake Appalachia, LLC*, Doc. 37, 5:15-CV-126 (N.D. W.Va. Feb. 15, 2017), and found that failure to provide said notice was not a material breach and that the "lack of harm" to the plaintiffs was clear because the Unit Declaration was timely recorded, placing the plaintiffs on record notice, and because the lease did not specify *when* any notice needed to be given. *Id.* at p. 7. Accordingly, this Court finds that even if the plaintiffs did intend to plead this as a breach of contract, they have failed to state a claim upon which relief can be granted.

## CONCLUSION

Accordingly, this Court **GRANTS** Defendant Chesapeake Appalachia, LLC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) **[Doc. 18]**, and **DISMISSES** Count I of the Amended Complaint **[Doc. 14]**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

It is so **ORDERED**.

**DATED:** February 7, 2018.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

9